UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| MARLON WATFORD, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 3:16-cv-582-NJR-GCS |
| KELLIE ELLIS, BRAD BRAMLETT, TONYA KNUST, and LACY REAMS, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT & RECOMMENDATION

SISON, Magistrate Judge:

Plaintiff Marlon Watford, a member of the Al-Islam faith, alleges that Defendants Kellie Ellis, Brad Bramlett, Tonya Knust, and Lacy Reams prevented him from using the restroom in the law library at Menard Correctional Center, causing him to experience pain, discomfort, and strain in violation of his religious obligation to maintain his body and keep it free from strains. Defendants have moved for summary judgment (Doc. 48) on Watford's First Amendment claim. The matter has been referred to the undersigned by Chief Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b) and Local Rule 72.1(a)(2). For the reasons delineated below, it is **RECOMMENDED** that the Court grant Defendants' motion for summary judgment.

I. FINDINGS OF FACT

On August 23, 2013, the day of the events alleged in this action, Plaintiff

Marlon Watford was incarcerated at Menard Correctional Center and a member of the Al-Islam faith. According to his amended complaint, a tenant of his faith is that he believes that "his body is a gift from his Lord to hold in trust during this life" and that he "has a spiritual obligation to maintain his body and keep it free from strains." (Doc. 2, p. 7). Watford has a medical condition that results in frequent need to use the restroom as a result of H. Pylori and irritable bowel syndrome.

Defendant Kellie Ellis was a correctional officer at Menard who was assigned to the law library on August 23, 2013. It was her job to maintain security in the law library while inmates conducted their legal research. She testified that only one correctional officer was assigned to the library at a time and that she could not leave the law library to escort an inmate out of the building. (Affidavit of Kellie Ellis, Doc. 49-2).

Defendants Tonya Knust and Brad Bramlett worked as assistant paralegals at Menard on August 23, 2013. Their job duties included filing pleadings electronically for inmates, notarizing documents and maintaining the legal resources in the law library. They also supervised the inmate law clerks. They were not correctional officers or a members of the security staff. They testified that, other than the inmate law clerks, they could not escort any inmate back to his cell house. They worked in a secure area, behind bars, separate from the area in the library where inmates were placed. If an inmate told one of them that he needed to use the restroom, Knust and Bramlett would direct the inmate to the law library officer on duty. (Affidavit of Tonya Knust, Doc. 49-3; Affidavit of Brad Bramlett, Doc. 49-4).

On August 23, 2013, Watford was housed in 8 gallery at Menard, which he describes as right across the street from the law library and about a one minute walk away. He went to the law library on a call pass after lunch. At his deposition, Watford described going to the library beginning with a 45-minute wait in a bullpen before being walked to the law library. Once the inmates arrive in the law library, they are given assigned seats. Inmates were once given free rein to go get the books they wanted, but the policy changed and inmate law clerks retrieved the books for their fellow inmates who were required to remain seated. All of the inmates who visited the library were escorted there by a single correctional officer. Once inmates arrived in the library, they were not allowed to leave until the 90-minute session ended. Watford testified that if an inmate needed to use the restroom while in the library, it was not allowed. (Doc. 49-1, p. 20-25).

Watford testified that Defendants Ellis, Bramlett and Knust were in the law library on August 23, 2013. When asked if any other correctional officers were present, Watford answered, "That day? No." (Doc. 49-1, p. 26-27). Approximately fifteen minutes after arriving in the library, Watford began to feel the urge to go to the bathroom. He described feeling a burning sensation in his side and kidney area and having spasms in his bowels, along with stomach pain. He alleges that he told Defendant Ellis that he needed to use the restroom. When she said no, he told an inmate law clerk to tell Defendant Bramlett, who also said no after conferring with Defendant Knust. (Doc. 49-1, p. 29-33).

Watford maintains that the restroom in the law library was functional on

August 23, 2013, and that a correctional officer could see him to supervise him while using the restroom. (Doc. 49-1, p. 28, 39-40). He described several other dates when he had similar issues being allowed to use the restroom while visiting the law library, including an occasion in the first week of September 2013 when Defendant Reams, a correctional officer, was present. He testified that Reams filled in for Ellis while Ellis went to lunch and that Ellis told Reams before leaving not to let the inmates use the restroom. (Doc. 49-1, p. 42-44).

Defendants Ellis, Knust and Bramlett maintain that the law library restrooms were being remodeled on August 23, 2013. According to Defendant Ellis, if an inmate needed to use the restroom while in the law library, he would raise his hand and inform an inmate law clerk that he needed to speak with her. She would give the inmate permission to come to the desk and speak to her. If a restroom break was needed, she could contact the school sergeant who, in turn, would contact the inmate's cell house. One of the officers from the cell house would come to escort the inmate to the restroom. Ellis testified that she had no control over how quickly the other correctional officer arrived to escort an inmate and that an inmate was allowed to return to the library to finish his research, time permitting.

The policy related to restroom use began in May or June 2013. Watford asked Ellis numerous times to use the restroom as soon as he got into the library. Ellis maintains that she called the school sergeant each time that Watford asked to use the restroom. Before the policy was in place, inmates could walk freely around the law library and use the restroom without permission. The restroom and no movement

policy was implemented because law books and library equipment were being destroyed and defaced. (Doc. 49-2).

The bathrooms were inoperable because of a security issue related to the inability of correctional officers to maintain sight of inmates using the restroom. It was determined that inmates would fight, commit assault and engage in security threat group violations in the restroom area. Until remodeling of the bathrooms could be completed, the administration at Menard deemed the bathroom closed. Inmates were required to remain seated the entire time while in the library and could only use the restroom after receiving permission from the law library officer. Ellis had no discretion and was required to follow the policy. (Doc. 49-2).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. P. 56(a)). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the

nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

An inmate is entitled to practice his religion under the First Amendment "insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990). A rule impinging on that right "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 79 (1987). Legitimate penological interests include the preservation of security in the prison, as well as economic concerns. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352-353 (1987); *Turner*, 482 U.S. at 90; *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009); *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). When these concerns are raised as justification by prison officials for their actions that restrict the practice of religion, the Court looks at four factors to determine whether the restriction is constitutional:

> (1) whether the restriction "is rationally related to a legitimate and neutral governmental objective"; (2) "whether there are alternative means of exercising the right that remain open to the inmate"; (3) "what impact an accommodation of the asserted right will have on guards and other inmates"; and (4) "whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns."

*Ortiz*, 561 F.3d at 669 (citing *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir.

2004))(alterations in original).

## III. ANALYSIS

### A. Merits of Watford's First Amendment Claim

Defendants first challenge that they had no personal involvement in the events that occurred on August 23, 2013. Only persons who cause or participate in an alleged constitutional deprivation can be held liable under § 1983. *See Greeno v. Daley*, 414, F.3d 645, 656-657 (7th Cir. 2005). As to Defendant Reams, the parties agree that she was not present in the law library on August 23, 2013. There is no evidence of her involvement in any alleged constitutional deprivation on that date, and, as such, she is entitled to summary judgment. Defendants Ellis, Knust and Bramlett all allegedly played a role, however disputed, in the denial of restroom access to Watford, and there are material factual disputes as to whether they had any personal involvement in the alleged constitutional deprivation.

Defendants next argue that the regulation against freely using the restroom while in the law library was reasonably related to a legitimate penological interest because the policy was put in place to curb inmate fights and assaults and security threat group activity in the law library restrooms. As such, they argue that they are entitled to summary judgment on the merits of Watford's claim.

According to Defendant Ellis, administrators at Menard determined that the only way to prevent fights and to protect inmates from injury in the law library was to institute a rule that inmates using the law library must remain seated and must ask permission before using the restroom. Watford counters that he was not provided

any alternative means of exercising his religious belief that he must remain free from strain. He argues that Defendants merely provide a list of excuses why his rights were burdened.

The evidence shows that the restroom-use policy was implemented to promote security and inmate safety in the law library restroom. There is no evidence of another purpose for the policy's implementation, though the limitation of free movement through the library itself, rather than the restroom specifically, was put in place to reduce damage to books and library property. Regulation of, and restrictions on, inmate movement from place to place within a prison are necessary to maintain security within an institution, and the preservation of security is a legitimate penological interest. There is no developed dispute of fact challenging whether limiting free access to the restroom is rationally related to this legitimate penological interest.

Instead, Plaintiff argues that there were not alternative means available to him for exercising his belief that he must remain free from physical strain. The policy itself does provide an option for inmates in the law library who needed to use the restroom. The library officer, Ellis in this case, was to call the school sergeant to contact a correctional officer to escort an inmate to the restroom. Watford testified that, instead of following the policy, Ellis told him he could not use the restroom at all. He also testified that he then attempted to ask Defendants Bramlett and Knust for permission to use the restroom. Defendants deny that they refused to let Watford use the restroom. Ellis maintains that she always called the school sergeant when

Watford asked to use the restroom. Bramlett and Knust deny being involved in any requests for restroom access. These disputes raise a question of material fact as to whether alternative means were available to Watford that must be resolved by a trier of fact.

### B. Qualified Immunity

Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson*, 555 U.S. at 232. *See also Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). To be "'clearly established' a right must be defined so clearly that every reasonable official would have understood that what he was doing violated that right." *Dibble v.*

*Quinn*, 793 F.3d 803, 808 (7th Cir. 2015)(citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). There need not be a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The right must be established "not as a broad general proposition." *Reichle*, 566 U.S. at 664. Instead, it must be "particularized" such that the "contours" of it are clear to a reasonable official. *Id*. That is, "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carmen*, 135 S.Ct. 348, 350 (2014).

If Watford's allegations are taken in the light most favorable to him, Defendants Ellis, Bramlett and Knust refused to allow him to use the restroom, which put stress on his body in a way that violated his religious beliefs. There is no evidence that Defendants knew that such a refusal would result in strain on Watford's body that would violate his religious beliefs. Plaintiff argues that there is a clearly established constitutional requirement not to deprive inmates of their First Amendment rights to practice their religion, which, while true, is a broad, generalized proposition. There is no particularized, clearly established right to free religious exercise that would allow a reasonable person to know, or even to suspect, that denying Watford access to the restroom during his time in the law library would violate such a right. As such, Defendants are entitled to qualified immunity.

IV. CONCLUSION

For the above-stated reasons, the undersigned **RECOMMENDS** that the Court **GRANT** Defendants' motion for summary judgment (Doc. 48), enter judgment in favor

of Defendants Ellis, Knust, Bramlett and Reams, and close this case. Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Seventh Circuit Court of Appeals. *See, e.g.*, *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). Accordingly, objections to this Report and Recommendation must be filed on or before <u>Wednesday, September 11, 2019.</u>

**IT IS SO ORDERED.**

Dated:  August 28, 2019.

_____
GILBERT C. SISON
United States Magistrate Judge